FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 30, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHNNY D.,[1]<br><br>  Plaintiff,<br><br>  v.<br><br>FRANK BISIGNANO,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>  Defendant. | No: 1:21-CV-03090-LRS<br><br>ORDER AFFIRMING THE<br>COMMISSIONER'S DECISION |

BEFORE THE COURT are the parties' briefs.  ECF Nos. 30, 34.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is represented by Special Assistant United States Attorney Ryan Lu.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's brief, ECF No. 30, is denied and Defendant's brief, ECF No. 34, is granted.

---

[1] The Court identifies a plaintiff in a Social Security case only by the first name and last initial to protect privacy.  See Local Civil Rule 5.2(c).

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 1

**JURISDICTION**

Plaintiff Johnny D. (Plaintiff), filed for supplemental security income (SSI) on March 27, 2012, alleging disability beginning October 1, 2010.  Tr. 229-34. Benefits were denied initially, Tr. 153-61, and upon reconsideration, Tr. 165-73. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on July 23, 2013.  Tr. 38-86.  In September 2013, the ALJ issued an unfavorable decision, Tr. 13-37, and in March 2015, the Appeals Council denied review.  Tr. 1-4.  Plaintiff appealed to the United States District Court for the Eastern District of Washington and in September 2016, the Honorable Fred Van Sickle issued an order reversing and remanding the case for further administrative proceedings. Tr. 1209-1260.

A second hearing was held on January 10, 2018. Tr. 1137-70. In July 2018, the ALJ issued a second unfavorable decision. Tr. 1086-1126. In June 2019, pursuant to the stipulation of the parties, Judge Van Sickle remanded the case for further proceedings. Tr. 2210-19.

A third hearing was held on February 3, 2021. Tr. 2139-67. In March 2021, the ALJ issued a third unfavorable decision. Tr. 2111-2138. In November 2021, pursuant to the stipulation of the parties, the undersigned remanded the case for further proceedings. Tr. 2106-2110.

A fourth hearing occurred on November 15, 2022. Tr. 2054-2100. On March 24, 2023, the ALJ issued a fourth unfavorable decision. Tr. 2018-53. Plaintiff again appealed to this Court for review.

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 2

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was born in 1970 and was 41 years old at the time of application.  Tr. 2041.  He dropped out of school in the seventh grade but later earned a GED. Tr. 49, 261. He has work experience as a construction worker and automobile body repairer. Tr. 2041. At the first hearing in 2013, Plaintiff testified that he could not work due to pain in his neck and right shoulder, numbness in his right arm, and difficulty being around others. Tr. 52, 59-60. He testified that he tends to isolate himself from others. Tr. 72.

In 2018, he testified that he started working again in March 2015. Tr. 1141. On April 8, 2015, Plaintiff was injured at work Tr. 1142, 1582. He left that job after three months because he did not fit in with the guys. Tr. 1150. He had surgery on his neck in 2015. Tr. 1152. In February 2017, he started a different job at an auto body shop prepping, vacuuming, and painting cars. Tr. 1148. He would miss work when his back was bothering him. Tr. 1151. Sometimes his right arm would go numb at work and his boss would move him to a different project. Tr. 1152. For example, when buffing a hood his shoulder would lock up and go numb, so he could not finish. Tr. 1152. He no longer felt the need for mental health treatment as often. Tr. 1154. He testified that he stopped using methamphetamine in 2014. He sometimes

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 3

would need to lie down during the day due to lower back and left leg pain. Tr. 1160. He had carpal tunnel surgery in April and May of 2018. Tr. 2159.

At the fourth hearing in 2022, Plaintiff testified that his lower back, shoulder, and neck are his most severe impairments due to pain, stiffness, and mobility issues. Tr. 2061. He has mental challenges including anxiety, nervousness, depression, and wanting to isolate himself. Tr. 2064. His mental health has gotten better over the preceding few years due to not taking drugs or being in prison. Tr. 2065. He started a new job at Cub Crafters Group in September 2021 and had been working there painting and prepping small airplanes for 14 months. Tr. 2066. He sometimes missed work due to his back and shoulder problems. Tr. 2071-72. Even though he had carpal tunnel surgery, his right hand still had problems with grip and slowed him at work. Tr. 2086. He still had problems interacting with others. Tr. 2087.

Plaintiff testified he had three L&I claims: a claim in April 2015 for his neck injury; a claim in August 2015 for carpal tunnel syndrome; and a claim in 2018 for back pain. Tr. 2083-84.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 4

mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 5

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 6

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 7

Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff engaged in substantial gainful activity from January through June 2015, February 2017 through March 2018, and September 13, 2021 through the date of the decision.  Tr. 2026.  However, there was a continuous 12-month period when Plaintiff did not engage in substantial gainful activity and the ALJ continued the findings for the periods March 27, 2012 through December 2014, July 2015 through January 2017, and April 2018 through September 2021. Tr. 2027.

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 8

At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical, lumbar and thoracic spine; carpal tunnel syndrome; bilateral shoulder degenerative changes; anti-social personality disorder; depressive disorder v. bipolar disorder; anxiety disorder; and polysubstance dependance.  Tr. 2027.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 2028.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> No overhead reaching; frequent reaching at or below shoulder level; frequent handling and fingering; occasional stooping, crouching, and climbing ramps and stairs; no crawling, kneeling, or climbing rope, ladders, and scaffolds; avoid concentrated exposure to extreme cold, vibrations, and hazardous conditions; able to understand, remember, and carry out simple and detailed but not complex instructions and tasks; able to use judgment to make simple and detailed but not complex work-related decisions; and can have frequent contact with the public, co-workers, and supervisors.

Tr. 2030.

At step four, the ALJ found Plaintiff is unable to perform past relevant work. Tr. 2041.  At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as marker, router, and production assembler. Tr. 2042.  Thus, the ALJ found that Plaintiff has not been under a

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 9

disability as defined in the Social Security Act since March 27, 2012, the date of the application. Tr. 2043.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income Title XVI of the Social Security Act.  ECF No. 30. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom testimony;

2. Whether the ALJ properly considered the medical opinion evidence; and

3. Whether the ALJ properly evaluated Plaintiff's substantial gainful activity.

ECF No. 30.

## DISCUSSION

**1.    Symptom Testimony**

Plaintiff contends the ALJ failed to properly assess his symptom testimony. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is supported.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 10

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record. Tr. 2031. The ALJ gave multiple reasons to support this finding which are discussed in turn.

### a. Objective Findings

The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). It is noted that the ALJ included limitations accounting for each of the impairments discussed below in the RFC by limiting Plaintiff to light work with no overhead reaching, frequent reaching at or below shoulder level, frequent handling and fingering, and other nonexertional and mental limitations. Tr. 2030. Thus, the ALJ concluded that Plaintiff had some limitations from his back, shoulder, hands, or mental health, but found that they are not as severe as alleged.

Regarding Plaintiff's back, the ALJ found: (1) Plaintiff has sought "minimal" treatment; (2) many normal range of motion, strength, and sensation findings; (3) x-rays showed mild degenerative changes; (4) records indicate Plaintiff did well after a

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 11

cervical discectomy and fusion in September 2015; and (5) February 2021 MRI and notes indicate some worsening lumbar issues, but treatment notes show no changes in function or presentation and Plaintiff was able to work starting in September 2021. Tr. 2031-32.

Plaintiff takes issue with the ALJ's characterization of his treatment as "minimal" and cites records documenting spine follow up or treatment. ECF No. 30 at 17. Plaintiff is correct that "minimal" is not a fair characterization of Plaintiff's treatment course, as the record shows he had surgery on his neck, injections, and other treatment at times. However, to the extent the ALJ erred by considering Plaintiff's treatment in this manner, this does not change the outcome of the ALJ's overall finding regarding Plaintiff's symptom statements. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Plaintiff asserts the record does not support the ALJ's conclusions about the medical findings regarding his back and cites records which he says contradict the ALJ's findings. However, it is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). It is not the role of the court to second-guess the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Even if the evidence could be resolved in Plaintiff's favor, the court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Having reviewed the

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 12

record, the Court concludes the ALJ's findings are based on substantial evidence. Furthermore, the ALJ found that Plaintiff has some limitations and pain due to his back but explained a rational basis for finding them less severe than alleged.

Plaintiff contends the ALJ should not have considered his ability to work in evaluating his back impairment because he worked under conditions not consistent with competitive work.  However, the regulations provide that employment during a period of claimed disability may show that a claimant is able to do more work than claimed, even if such work is not substantial gainful activity. 20 C.F.R. § 416.971. "An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020).

Regarding carpal tunnel syndrome, Plaintiff contends the ALJ incorrectly interpreted the evidence. The ALJ noted that in 2013, Plaintiff reported recent onset of bilateral hand and wrist pain and difficulty gripping objects. Tr. 3827-29. On exam, there was mild swelling but no other abnormalities, and Plaintiff stated that at their worst, his symptoms were "very mild." Tr. 911. In July 2014, there were no negative findings regarding his hands and in April 2015, he had intact grip. Tr. 1570, 1681, 2952. EMG testing in July 2015 showed evidence of cervical radiculopathy, but on exam he had normal range of motion so shoulders, elbows, wrists, and fingers bilaterally and intact sensation and strength. Tr. 1850. In March 2016, he had radicular symptoms in his left arm and hand, but testing one month later showed 5/5 strength in all upper body parts. Tr. 1748, 1912.

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 13

Further, the ALJ noted that at a consultative exam in April 2017, Plaintiff did not report any problems with his hands or arms. Tr. 1885. At the time of the exam, Plaintiff's cervical pain was improved and he described only an "intermittent mild tingling sensation on his right thumb and index finger." Tr. 1885. Plaintiff reported "his strength and dexterity are normal." Tr. 1885. At that time, he worked 40 hours per week in an autobody shop and the exam findings included 5/5 grip strength, intact sensation of the hands, and he was able to perform manipulative tasks. Tr. 1887-88. The ALJ noted Plaintiff reported intermittent hand numbness and pain which he related to using buffers, grinders, and power tools at his job; on exam, Phalen's test was positive and he was advised to wear wrist splints. He continued to work until undergoing carpal tunnel surgeries in April and May of 2018.

Plaintiff asserts the ALJ is incorrect about his reports of no problems during the April 2017 exam because in discussing his cervical pain, it was noted that, "[p]rior to the [2015 cervical] surgery, he was having marked cervical pain with marked right hand and arm radicular pain and weakness." Tr. 1885. This is offset by the essentially normal July 2015 exam findings cited by the ALJ; and, regardless, the reference appears to be to no problems at the time of the 2017 exam. The ALJ also noted that after surgery in 2018, Plaintiff has had few complaints about carpal tunnel symptoms. Tr. 2033. Plaintiff contends this is incorrect, but points to only two records in the first few months after surgery where physical therapy was recommended. Tr. 3394, 3456-57. After physical therapy and doing home exercises,

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 14

he was "feeling better overall," had stopped using his hand braces, and was able to perform his ADLs independently. Tr. 3456. He was found to be making "excellent progress" and was "responding very well" to physical therapy. Tr. 3458. The ALJ's recitation of the record reasonably supports the ALJ's conclusion.

Regarding Plaintiff's shoulder, the ALJ noted Plaintiff sought treatment for shoulder pain in February 2013 and July 2014 and indicated his shoulder pain was due to a workplace injury that had occurred 15 years prior. Tr. 2033 (citing Tr. 928-29, 1677-78, 3821-22). A 2013 x-ray revealed absence of the right distal clavicle and mild upward displacement possibly from prior surgery or trauma. Tr. 921. On exam in July 2014, pain and decreased range of motion were described, but muscle strength testing was 5/5 with abduction, internal rotation, external rotation, flexion and extension. Tr. 1681. The ALJ noted Plaintiff continued to report shoulder problems intermittently but observed there are no findings indicating his shoulder problem would prevent him from doing light work with restrictions of no overhead reaching and frequent reaching at or below shoulder level. Tr. 2033. Plaintiff contends the ALJ simply repeated objective findings in support of an RFC which should not count as a clear and convincing reason. ECF No. 30 at 21 (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015)). However, in context of the overall assessment of objective evidence and the ALJ's other reasons, this finding is not based on error.

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 15

Regarding Plaintiff's mental health, the ALJ found Plaintiff has sought treatment inconsistently and had generally normal unremarkable mental status exams, typically exhibited normal mood and affect, and regularly denies depression, anxiety, or any significant mental health concerns. Tr. 2033. Plaintiff contends the ALJ referenced no evidence supporting the conclusion that Plaintiff has sought treatment inconsistently and cites records showing periods of regular treatment. As the ALJ did not refer to the record regarding Plaintiff's mental health treatment, the Court cannot conclude this portion of the ALJ's finding is supported by substantial evidence. However, the ALJ did cite the record for unremarkable mental status exams with normal attention span and concentration; normal mood and affect, and denials of depression, anxiety, or significant mental health concerns. Tr. 2033. Plaintiff cites other findings and observations in the record where he presented with some negative mental health findings; to the extent the findings are mixed or could be interpreted differently, the Court defers to the ALJ's interpretation of the evidence.

### b.  Inconsistent Statements and Activities

The ALJ found Plaintiff engaged in activities inconsistent with his allegations. Tr. 2033-34. The ALJ observed Plaintiff testified in 2013 that he goes to an AA meeting every day, spends time with his sponsor engaged in various activities such as going to the movies, and acts as a sponsor for others. He does chores, visits his three-year-old daughter twice a month, and enjoys activities with his fiancé; he

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 16

enjoys camping and fishing and had gone fishing three weeks before the hearing. At the most recent hearing, he testified that he is the full-time caregiver for his seven-year-old daughter. Plaintiff argues he did not allege any social limitations so the ALJ's finding is inapplicable; yet the ALJ noted his 2013 testimony that he has anxiety and difficulty being around others due to his mental health and that he prefers to be alone, and he testified similarly at other hearings. Tr. 52, 72, 2064, 2087. Plaintiff also asserts these activities do not show he can perform light work. However, the ALJ found that while these activities may not indicate that Plaintiff can perform full-time work, they show he is capable of interacting with others and performing tasks that require abilities consistent with the RFC. Tr. 2034. This is a reasonable interpretation of the evidence.

The ALJ observed that although Plaintiff alleges disability starting in 2012, he told a provider that before he was injured at work in April 2015, he was completely independent with all ADL's and was able to work without pain. Tr. 2034 (citing Tr. 1582). Plaintiff takes issue because the medical record cited actually says, "prior to this injury he was completely independent with all ADL's and was able to perform all work related duties without *increased* pain or restriction." Tr. 1582 (emphasis added). However, the ALJ acknowledged Plaintiff had some pain throughout the record. This does not change to the ALJ's conclusion that Plaintiff was independent with ADL's and performing his work duties at the time.

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 17

The ALJ also observed that Plaintiff stated during the pandemic that he needed to "pull back from work" and he could not find a babysitter for his daughter. Tr. 2034; Tr. 2821. The ALJ observed that while this was understandable, this statement and Plaintiff's receipt of $40,000 of unemployment benefits indicates his lack of work during the pandemic was likely not due to his impairments. Tr. 2034. Plaintiff argues the ALJ read too much into the statements and that he did not state that lack of childcare was the reason for pulling back from work. Nevertheless, the ALJ's inference from the record is rational.

Another inconsistency found by the ALJ is that while Plaintiff reports significant, ongoing, disabling pain, he is routinely described in no acute or apparent distress. Tr. 2035 (citing *e.g.*, Tr. 377, 409, 450, 466, 651, 898, 903, 912, 920, 1735, 1757, 1850). Plaintiff counters the ALJ's finding by noting that "no acute distress" is of limited value in evaluating chronic conditions, and that Plaintiff has been in distress on other occasions. ECF No. 30 at 25 (citing *e.g.*, Tr. 925, 2926, 3672, 4010, 4097, 5045). The Ninth Circuit has mentioned chart notes indicating a claimant presented in no acute distress as a factor in discounting both medical opinions and a claimant's subjective symptom testimony. *See Rollins*, 261 F.3d at 856; *Dattilo v. Berryhill*, 773 F. App'x 878, 881 (9th Cir. 2010); *Hasso v. Colvin*, 617 F. App'x 780, 781 (9th Cir. 2015); *see also Hernandez v. Comm'r of Soc. Sec. Admin.*, 1:22-cv-00188-CDB, 2024 WL 3470855 (E.D. Ca. July 18, 2024); *Bartlett v. Colvin*, 1:14-cv-00142-SB, 2015 WL 2412457, at *2, 8 (D. Or. May 21, 2015). However,

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 18

some courts have questioned the applicability of the generic chart note of "no acute distress" to chronic conditions. *See Toni D. v. Saul*, No. 3:19-cv-820-SI, 2020 WL 1923161, at *6 (D. Or. April 21, 2020) (citing *Mitchell v. Saul*, No. 2:18-cv-01501-GMN-WGC, 2020 WL 1017907, at *7 (D. Nev. Feb. 13, 2020)); *Richard F. v. Comm'r of Soc. Sec.*, No. C19-5220 JCC, 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019).

This is a smaller point in the ALJ's overall finding of inconsistencies in the record. The ALJ did not say Plaintiff never appeared in distress or in pain; in fact, the ALJ cited, for example, an acute episode where Plaintiff appeared presenting uncomfortable and in pain. Tr. 2032 (citing Tr. 1569). Even if there are some findings which differ from those cited by the ALJ, the ALJ's greater point is based on a reasonable interpretation of the record.

*Exaggeration*

The ALJ found evidence that Plaintiff exaggerated his psychiatric difficulties. Tr. 2034. An ALJ may reject a claimant's testimony if there is evidence of a tendency to exaggerate symptoms. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The ALJ noted the Personality Assessment Inventory (PAI) administered in June 2012 and March 2013 both suggested Plaintiff was exaggerating his complaints and indicated the test results were considerably distorted and unlikely to reflect his objective clinical status. Tr. 823, 837. And the ALJ observed there are inconsistencies between Plaintiff's self-report on the PHQ-

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 19

3 depression questionnaires where he gave responses indicating severe depression but then did not present with a depressed mood or affect. Tr. 2034. For the same reasons previously found by this Court, this conclusion is not sufficiently supported by the record and does not rise to the level of a clear and convincing reason. *See* Tr. 1228-30. Nevertheless, as before, this error is harmless because the ALJ offered other clear and convincing reasons supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

The ALJ also found evidence that Plaintiff exaggerated his physical complaints for disability or workers' compensation evaluations. Tr. 2034. For example, in April 2016, he presented to his back surgeon for exam and findings indicated Plaintiff was pleasant, in no distress, ambulated without gait assistance, and had strength of 5/5 in the lower extremities. Tr. 1739. One week later, at a worker's compensation evaluation, Plaintiff presented dramatically with an antalgic gait, holding his back while walking, grunting and deep breathing throughout the exam, and struggling to get up from a seated position. Tr. 1747, 5045. One month later, at a gastroenterology appointment, the general full exam findings were normal, including the cranial nerve assessment. Tr. 1754.

Plaintiff contends the first two exams were both L&I exams, so the ALJ's point that he exaggerates for L&I is not valid. He also argues the gastroenterology exam would not normally include findings outside of the specialty. While the ALJ's conclusions are inferential and may not be particularly persuasive, they are

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 20

not erroneous. And, even if they were, the ALJ has cited other clear and convincing reasons supported by substantial evidence.

    *c.  Treatment*

The ALJ found Plaintiff has not always followed through with treatment recommendations and plans, particularly regarding his workers' compensation claims. Tr. 2035. The ALJ cited one record, a letter from L&I stating that he "had not cooperated with the treatment plan provided by the IME" and his claim was at risk for suspension. Tr. 4570. Yet the letter went on to state that it had "received the requested communication regarding the reasons for not seeking treatment" and that L&I had information "that you are now in compliance with the treatment plan." Tr. 4570. The information submitted to L&I in response to the noncompliance letter details that Plaintiff had difficulty accessing providers to carry out the treatment plan. Tr. 4536. The ALJ must consider possible reasons why the claimant may not comply with treatment or seek treatment consistent with the degree of complaints. Social Security Ruling 16-3p, 2017 WL 5180304, at *9 (effective October 25, 2017). The ALJ failed to consider this evidence explaining the reason for noncompliance or note that Plaintiff was ultimately determined to be in compliance with the L&I treatment plan. This is not a clear and convincing reason supported by substantial evidence. However, this is harmless error as the ALJ provided other clear and convincing reasons supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 21

*d. Work*

The ALJ observed that Plaintiff engaged in work activity throughout the period at issue which is inconsistent with disability. Tr. 2035. Plaintiff testified that from 2021 until the date of the decision, he was employed at Cub Crafters Group, prepping and spray-painting aircraft parts full-time. Tr. 2066. Plaintiff stated he has some absences and difficulty with certain tasks, but his employer is understanding. Tr. 2067, 2071. He has been employed for over a year. Tr. 2066.

Plaintiff argues this is not substantial gainful activity and should not be considered. As noted *supra*, the regulations provide that employment during a period of claimed disability may show that a claimant is able to do more work than claimed, even if such work is not substantial gainful activity. 20 C.F.R. § 416.971. "An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Ford*, 950 F.3d at 1156. The ALJ reasonably considered Plaintiff's work in evaluating his symptoms statements.

**2.  Medical Opinions**

Plaintiff contends the ALJ erred in evaluating certain medical opinions regarding Plaintiff's physical and mental limitations. For claims filed before March 27, 2017, medical opinion evidence is evaluated by considering the three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 22

(nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).[2]

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only

---

[2] For claims filed on or after March 27, 2017, the regulations changed the framework for evaluation of medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c. Plaintiff's claim was filed in January 2016, so the previous method of evaluating medical opinions applies.

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 23

reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

### a. Physical

The ALJ gave great or significant weight to the opinions of reviewing physicians Alnoor Virji, M.D., Howard Platter, M.D., and James Irwin, M.D., and to examining physician William Drenguis, M.D., who assessed limitations consistent with the RFC finding. Plaintiff contends the ALJ erred by giving little or no weight to other medical opinions containing disabling limitations. Each of the challenged opinions is considered in turn.

*Caryn Jackson, M.D.*

In March 2013, Dr. Jackson completed a DSHS Physical Evaluation form and opined that Plaintiff was limited to sedentary work. Tr. 907-08. In July 2013, Dr. Jackson completed a Medical Report form and opined that Plaintiff needs to lie down during the day for one-half to one hour per day to relieve shoulder pain; that work on a regular basis would likely exacerbate his mental disorder and cause worsening pain; he would miss four or more days of work per month due to pain; he could perform sedentary work with occasional handling and never reaching with the right upper extremity. Tr. 978-80.

The ALJ found Dr. Jackson's opinions are entitled to little weight because the degree of limitations assessed is: (1) not consistent with normal findings in the

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 24

record; (2) not supported by her own findings; (3) the shoulder limitations are not consistent with exam findings which consistently indicate normal range of motion and strength; (4) Dr. Jackson relied heavily on Plaintiff's subjective complaints; and (5) Plaintiff has sought minimal treatment for his shoulder complaints; and (6) he acknowledged that medication relieves his pain. Tr. 2036.

This Court previously rejected the ALJ's reasoning that Dr. Jackson relied on Plaintiff's subjective complaints for her opinion. Tr. 1239. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602. However, the ALJ must provide the basis for the conclusion that an opinion was more heavily based on a claimant's self-reports than the medical evidence. *Ghanim*, 763 F.3d at 1162. As before, the ALJ here failed to articulate such reasoning, so this was not a specific, legitimate reason for rejecting Dr. Jackson's opinion.

Plaintiff contends that records indicate right shoulder and neck range of motion and upper extremity strength limitations which show that Dr. Jackson's assessment is supported. However, as discussed throughout this decision, the ALJ's conclusions regarding the objective findings regarding Plaintiff's shoulder, neck, and back are supported by the record. The ALJ rationally found the degree of limitations assessed by Dr. Jackson is inconsistent with other evidence in the record and this is a specific, legitimate reason to give them little weight. *See Burch*, 400 F.3d at 679. With regard to Dr. Jackson's May 2013 treatment note indicating that

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 25

Plaintiff said medication was helping, Tr. 881, it is not clear from the record or the ALJ's discussion how this undermines Dr. Jackson's opinion, and this is not a specific, legitimate reason. Nonetheless, the ALJ's reasons overall are specific, legitimate, and supported by substantial evidence.

*Andrew Hilty, ARNP*

In March 2016, Mr. Hilty completed a DSHS Physical Functional Evaluation form. Tr. 1862-66. He assessed cervical radiculitis, carpal tunnel syndrome, and lumbar radiculopathy and opined Plaintiff was limited to sedentary work. Tr. 1863-64. He assessed the severity of Plaintiff's cervical radiculitis as severe and opined Plaintiff is unable to sit, lift, carry, handle, push, pull, or reach. Tr. 1863. The ALJ gave Mr. Hilty's opinion little weight because: (1) he did not provide a sufficient explanation for such a significant restriction; and (2) the exam he performed on the day he completed the form did not show more than minimal abnormalities or any clinical observations suggesting the assessed limitations. Tr. 2036.

The ALJ reasonably found little explanation for the opinion contained on the form. While Mr. Hilty noted Plaintiff's subjective complaints, his medications, and referenced imaging, there is essentially no explanation for the degree of limitation assessed. Tr. 1862-64. Exam findings for the day of the assessment included muscle tension and tenderness in the bilateral shoulders and cervical area; reduced range of motion of hips and lumbar spine; and note that Plaintiff was unable to sit for more than 5 minutes during the interview and was visibly uncomfortable. Tr. 1807, 1864-

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 26

65.  Plaintiff contends these are not "minimal" findings; regardless of the ALJ's use of the word "minimal," the ALJ's conclusion that these findings do not support the degree of limitations assessed is a rational one. To the extent they could be interpreted differently, the Court defers to the ALJ's conclusion. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190 (9th Cir. 2004).

> *Stephen Foster, D.O.*

In July 2014, Dr. Foster completed a DSHS Physical Functional Evaluation form and indicated diagnoses of cervicalgia and right shoulder pain. Tr. 1672-74. He opined the limitations from those conditions caused moderate work-related limitations and limited Plaintiff to sedentary work. Tr. 1673-74. The ALJ gave Dr. Foster's opinion little weight because he did not provide sufficient support for such a restrictive limitation. Tr. 2036. The ALJ noted Dr. Foster documented only mild pain and minimally abnormal findings on exam. The ALJ also found the opinion is not consistent with Plaintiff's return to work in early 2015 or Plaintiff's report that before his workplace injury in April 2015, he did not have any pain or physical limitations. Tr. 2036. And, the ALJ found the opinion is inconsistent with the record as a whole. Tr. 2036.

Plaintiff contends the ALJ's finding of mild pain and minimal abnormalities is incorrect. Dr. Foster's musculoskeletal exam from the same day reflects mostly normal findings with mild pain and muscle rigidity of the lower cervical spine, limited range of motion in the cervical spine and shoulder, and pain in the shoulder

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 27

joint. Muscle strength was 5/5 with abduction, internal rotation, external rotation, and flexion/extension. Tr. 1681. Dr. Foster noted the 2013 right shoulder and neck x-rays showing clavicle displacement due to prior trauma and mild to moderate degenerative changes of the neck. Tr. 1673. There is a range of motion test chart attached to the opinion appears to show slightly reduced range of motion in back extension, lateral neck bending, neck rotation, and right shoulder flexion. Although Plaintiff disagrees, the ALJ could rationally find that the limitations assessed exceed the findings and Dr. Foster noted mild pain. Furthermore, as discussed throughout this decision, the ALJ reasonably concluded that the record overall is inconsistent with these limitations.

Plaintiff contends his return to work in early 2015 does not contradict Dr. Foster's assessment. As noted above, the record indicates that Plaintiff reported, "prior to this [April 2015] injury he was completely independent with all ADL's and was able to perform all work related duties without increased pain or restriction." Tr. 1582. Plaintiff suggests that even if he briefly felt better, the injury itself suggests he was not capable of work. However, Plaintiff has not identified any records between Dr. Foster's July 2014 assessment and the April 2015 injury contradicting the ALJ's conclusion and the Court finds none. *See e.g.*, Tr. 2485-2514, 2515. Even if Plaintiff's return to work could be considered differently, the ALJ's inference from the evidence is supported by the record.

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 28

*Mary Pine, PA-C and Thomas McClure, M.D.*

The ALJ noted the record contains multiple medical opinions related to Plaintiff's workers' compensation claims. Among those medical opinions are various statements and opinions from Thomas McClure, M.D., following Plaintiff's 2015 work-related injury, and from Mary Pine, PA-C, following his 2018 work-related injury.  These opinions included certain limitations or indicate Plaintiff should be off work, on modified duty, or temporarily totally disabled. Tr. 2840, 2918, 2927, 3030, 3682, 3716, 3727, 3895, 3984, 4012, 4026, 4064 (McClure 2015-16); Tr. 4263, 4291, 4352, 4374, 4396, 4593, 4667, 4719, 4778, 4909 (Pine 2018-19).

Among these are also the opinions of Maria Armstrong-Murphy, M.D., who examined Plaintiff and assessed limitations on April 27, 2016, consistent with the ability to return to work. Tr. 419. He was found able to return to work on that date. Tr. 4158, 4163.  There are also opinions from examiners S. Daniel Seltzer, M.D., and Vorderbet Kamath, M.D., who opined that as of September 6, 2018, Plaintiff could return to work as long as he did not lift more than 20 to 25 pounds and avoided repeated bending and twisting. Tr. 4470-82.

The ALJ found little value in the opinions related to worker's compensation claims in terms of determining Plaintiff's RFC since 2012. Tr. 2038.  The ALJ found: (1) assessments made in connection with worker's compensation claims concerned a specific injury and evaluation of whether the injury was work-related

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 29

and when Plaintiff could return to that job; (2) these reports do not consider all of Plaintiff's impairments and do not describe overall functioning; (3) because the ALJ found Plaintiff is unable to perform past work, findings regarding the ability to return to that work are not relevant; (4) any specific assessment does not establish an inability to perform work for at least 12 continuous months because Plaintiff was found able to return to the jobs he was performing in less than 12 months, and those jobs were physically more demanding than the RFC allows. Tr. 2038.

Plaintiff picks at each of these reasons and argues the ALJ is incorrect. However, the ALJ's final reason by itself is a specific, legitimate reason supported by substantial evidence for finding the assessments of Dr. McClure and Ms. Pine of little value. Although Plaintiff argues some of the "off-work" statements and limitations assessed were open-ended, the ALJ observed that Plaintiff was ultimately found to have fewer limitations that allowed him to return to work within 12 months, and those jobs were more demanding than the RFC finding. Tr. 2038. This reasonably offsets any inference of continuing or open-ended disability which could be inferred from Dr. McClure's or Ms. Pine's assessments.

### b. Mental

The ALJ gave significant weight to the June 2012 and March 2013 opinions of Aaron Burdge, Ph.D., who examined Plaintiff and opined that he has no mental limitations. Tr. 813-17, 846-53. The ALJ gave partial or little weight to other mental health opinions, some of which are challenged by Plaintiff.

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 30

*John Gilbert, Ph.D. and Leslie Postovoit, Ph.D.*

In May 2012, Dr. Gilbert reviewed the record and found Plaintiff is able to carry out simple and some complex job tasks at a productive pace with occasional interruption of sustained concentration, persistence, and pace; he could work away from the public and no more than frequent coworker interaction would be best; Plaintiff could accept instructions but would struggle with more harsh criticism; he would do best with routine, more predictable work environments. Tr. 130-31. Dr. Postovoit reviewed the record and assessed the same limitations. Tr. 147-48. The ALJ gave partial weight to the opinions of Dr. Gilbert and Dr. Postovoit, finding they are largely consistent with mental status exams, minimal mental health treatment, with statements that Plaintiff's mental health had improved, and with his activities. The ALJ determined that the limitation of "occasional" interruption of sustained concentration, persistence, or pace is consistent with "intermittent" or "on occasion" and coincides with Plaintiff's ability to complete a normal workday and workweek. Tr. 2039.

Plaintiff contends the 2016 district court decision found the "occasional" limitation is disabling and it is therefore law of the case. Tr. 2039 (citing Tr. 1236). The Court disagrees. The 2016 district court decision ultimately directed the ALJ to "reconsider the medical opinion evidence" and "reassess the RFC," Tr. 1250, and there have been two additional district court instructions to review the medical opinions since that time. Additionally, the first ALJ decision, which was the subject

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 31

of the 2016 district court decision, gave "great weight" to these opinions, while the current decision only accords these opinions only "partial weight." This is appropriate given that after the 2012 opinions of Drs. Gilbert and Postovoit and after the 2016 district court decision, there has been significant development of the record which impacts the ALJ's assessment of the record overall.

*Thomas Genthe, Ph.D. and R.A. Cline, Psy.D.*

In April 2014, Dr. Genthe completed a DSHS Psychological/Psychiatric Evaluation form. Tr. 1684-89. He diagnosed disruptive mood dysregulation disorder, anxiety disorder, ADHD, and cannabis use disorder in early remission. Tr. 1686. Dr. Genthe assessed severe limitations in four functional areas and marked limitations in eight functional areas. Tr. 1687.

In February 2016, Dr. Cline completed a DSHS Psychological/Psychiatric Evaluation and diagnosed antisocial personality disorder. Tr. 1667-71. Dr. Cline opined Plaintiff has mild or moderate limitations in most functional areas, but marked limitations in the ability to communicate and perform effectively in a work setting and in the ability to maintain appropriate behavior in a work setting. Tr. 1670.

The ALJ gave little weight to the marked and severe limitations in these opinions for the same reasons: they are inconsistent with mental status exams throughout the record; they are inconsistent with Plaintiff's minimal mental health treatment and his report that his mental health had improved; they are inconsistent

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 32

with his daily activities, including his ability to work for extended periods of time during which he demonstrated an ability to function to a greater extent than their assessments suggest. Tr. 2040. Plaintiff contends these reasons are not well supported and cites instances in the reports and the record indicating Plaintiff had mental health symptoms. As discussed above, the ALJ did not adequately discuss Plaintiff's minimal mental health treatment with citations to the record. However, the ALJ's explanation regarding the record as a whole, Plaintiff's daily activities, and his ability to work with any mental health impairment is supported by substantial evidence. Therefore, these are specific, legitimate reasons supported by substantial evidence.

*Christopher Clark, M.Ed., LHMC*

In August 2011, Mr. Clark completed a DSHS Psychological/Psychiatric Evaluation form and listed diagnoses of bipolar disorder, ADHD, polysubstance abuse in reported remission, and antisocial personality disorder. Tr. 677-81. Mr. Clark assessed marked limitations in the ability to communicate and perform effectively in a work setting with public contact or limited public contact and in the ability to maintain appropriate behavior in a work setting. Tr. 679. Mr. Clark explained that rapid and disorganized speech with thought disorganization would likely interfere with his ability to work, and that he observed Plaintiff to be impulsive and likely to elope without notice. Tr. 679. The ALJ gave Mr. Clark's opinion little weight regarding the marked limitations because the limitations are not

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 33

consistent with Plaintiff's mental status exams, which show mostly stable mood and intact cognition. Tr. 2038. The ALJ also found that Mr. Clark's opinion is not consistent with Plaintiff's daily activities which, as discussed above, suggest an ability to perform a wide range of tasks and interact with others in a variety of settings. Tr. 2038. The Court disagrees with Plaintiff that the ALJ's findings are "uncited and unexplained." The ALJ gave specific, legitimate reasons for discounting Mr. Clark's opinion.

**3.       Step One – Substantial Gainful Activity**

Plaintiff contends the ALJ erred at step one in two ways: (1) by finding he earned substantial gainful activity (SGA) January to June 2015; and (2) by failing to consider that work from 2017 to 2018 and 2021 to 2022 was performed under "special conditions."  Even if the ALJ erred, the error was harmless because the ALJ continued with the sequential evaluation process.  When an ALJ proceeds to the next step of the sequential evaluation process, any error at that step is harmless in the ALJ's ultimate nondisability finding. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008). Plaintiff argues the error is harmful because the ALJ continued to refer to past work throughout the decision.  However, as discussed above, the ALJ reasonably considered Plaintiff's work efforts, even if they are not substantial gainful activity. Plaintiff's step-one arguments therefore do not establish harmful error.

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 34

**Accordingly, IT IS ORDERED:**

1.  Plaintiff's Brief, **ECF No. 30**, is **DENIED**.

2.  Defendant's Brief, **ECF No. 34**, is **GRANTED**.

**IT IS SO ORDERED**.  The District Court Executive is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** March 30, 2026.

LONNY R. SUKO
Senior United States District Judge

ORDER AFFIRMING THE COMMISSIONER'S DECISION - 35